Argued and submitted November 15, on appellant's petition for reconsideration filed September 8, and respondents' response filed September 15, 2022; reconsideration allowed, previous order adhered to January 25, 2023

Jeanyne JAMES;
Robin Colbert; Wendell Carpenter; Jane Drevo;
Sam Drevo; Brooke Edge and Bill Edge, Sr.;
Lori Fowler; Iris Hampton; James Holland;
Rachelle McMaster; Kristina Montoya;
Northwest River Guides, LLC; Jeremy Sigel;
Shariene Stockton and Kevin Stockton,
individually and on behalf of all others
similarly situated,
*Plaintiffs-Respondents,*

*v.*

PACIFICORP,
an Oregon corporation;
and Pacific Power,
an Oregon registered electric utility
and assumed business name of PacifiCorp,
*Defendants-Appellants.*

Multnomah County Circuit Court
20CV33885; A179027

524 P3d 506

This matter arises out of a putative class action against PacifiCorp for allegedly causing or contributing to four wildfires. The trial court conditionally certified an issues-based class pursuant to ORCP 32 comprised of people who were living within the fire boundaries or whose property was damaged by those fires. PacifiCorp sought interlocutory appellate review of the class certification order pursuant to ORS 19.225. *Held*: Although the statutory prerequisites for interlocutory appeal were met in this case, the Court of Appeals declined to exercise its discretion to accept the appeal because the order will not effectively terminate the litigation, the appeal does not present an unsettled and fundamental issue of law, and the order is not manifestly erroneous.

Reconsideration allowed; previous order adhered to.

Brad S. Daniels argued the cause for appellants. Also on the supplemental brief were Per A. Ramfjord, Crystal S. Chase, and Stoel Rives LLP.

Matthew J. Preusch argued the cause for respondents. Also on the supplemental brief were Daniel Mensher, Natida

Sribhibhadh, Yoona Park, and Keller Rohrback L.L.P.; Keith A. Ketterling, Timothy S. DeJong, Cody Berne, and Stoll Stoll Berne Lokting & Shlachter P.C.; Nicholas A. Kahl and Nick Kahl, LLC; and Derek C. Johnson, Marilyn A. Heiken, and Johnson Johnson Lucas & Middleton, PC.

Nadia H. Dahab and Sugerman Dahab filed the memorandum *amicus curiae* for Oregon Trial Lawyers Association.

Before Egan, Presiding Judge, and Lagesen, Chief Judge, and Kamins, Judge.

KAMINS, J.

Reconsideration allowed; previous order adhered to.

**KAMINS, J.**

This matter arises out of a putative class action against PacifiCorp and Pacific Power (PacifiCorp), for allegedly causing or contributing to four wildfires that occurred over the 2020 Labor Day weekend. The trial court conditionally certified an issues-based class pursuant to ORCP 32, comprised of people who were living within the fire boundaries or whose property was damaged by those fires. PacifiCorp sought interlocutory appellate review of the class certification order pursuant to ORS 19.225, which the Appellate Commissioner denied. We now reconsider that denial.

ORS 19.225 contains two provisions relevant here: The first establishes prerequisites for interlocutory appeal of class action orders, and the second grants us the discretion to permit or deny such appeals.[1] The Appellate Commissioner determined that this case did not satisfy the statutory prerequisites. We granted reconsideration, noting in particular the "dearth" of Oregon case law addressing both the prerequisites and the considerations that inform the exercise of our discretion. For the reasons that follow, we conclude that, in this case, the statutory prerequisites are met, but application of the discretionary criteria counsels against immediate review. As a result, on reconsideration, we adhere to the Appellate Commissioner's order and deny interlocutory review, but for different reasons.

## I.   BACKGROUND

We recite the historical facts as stated in the Appellate Commissioner's order:

> "Defendants are entities comprising a public utility that owns and/or operates powerlines and related infra-structure and equipment, and provides electricity to

---

[1] ORS 19.225 provides, in relevant part:

"When a circuit court judge, in making in a class action under ORCP 32 an order not otherwise appealable, is of the opinion that such order involves a controlling question of law as to which there is substantial ground for difference of opinion and that an immediate appeal from the order may materially advance the ultimate termination of the litigation, the judge shall so state in writing in such order. The Court of Appeals may thereupon, in its discretion, permit an appeal to be taken from such order to the Court of Appeals if application is made to the court within 10 days after the entry of the order."

consumers, throughout the state of Oregon. Plaintiffs are citizens of Oregon representing themselves and others who were harmed by wildfires that occurred in Oregon in early September 2020. In plaintiffs' view, the significance of the harm caused by those wildfires is attributable to defendants' various acts and omissions. As a result, plaintiffs brought this class action against defendants for, among other things, negligence, nuisance, and trespass, seeking no less than $1.6 million in damages."

Plaintiffs' complaint alleges that PacifiCorp failed to adequately prepare for or respond to an extreme windstorm that swept through the state. Specifically, plaintiffs allege that PacifiCorp's power line infrastructure was not fire safe and that PacifiCorp unreasonably failed to inspect its power lines, clear vegetation, and, during the windstorm, de-energize power lines. As a result, plaintiffs contend, trees and brush blew into power lines and caught fire, igniting and/or fueling the four fires.

The trial court certified 14 common questions of liability, encompassing issues of negligence, causation, and foreseeability, among others. As relevant here, the court found that those issues "include[d] common questions of law or fact" and that those "common issues predominate over individual questions." ORCP 32 A(2), B(3). The court also determined that the trial should be bifurcated, such that the first phase would adjudicate the 14 liability issues on a class-wide basis, and the second phase would adjudicate each individual class member's damages. On PacifiCorp's motion, the trial court entered a supplemental order certifying for interlocutory appeal the question of "[w]hether common issues predominate over any issues affecting only individual class members."

PacifiCorp applied for leave to file a notice of appeal from the certification order, which plaintiffs opposed. The Appellate Commissioner denied PacifiCorp's application,[2]

_____

[2] *See* ORAP 7.55(1) ("[T]he appellate commissioner for the Court of Appeals is delegated concurrent authority to decide motions and own motion matters that otherwise may be decided by the Chief Judge under ORS 2.570(6). The appellate commissioner is delegated concurrent authority to decide any other matter that the Court of Appeals or Chief Judge lawfully may delegate for decision." (Footnote omitted.)).

determining that the statutory prerequisites contained in ORS 19.225 were not met. PacifiCorp petitioned for reconsideration, which plaintiffs also opposed. The Chief Judge granted reconsideration,[3] and we heard oral argument after receiving supplemental briefing from the parties.

## II.   ORS 19.225

ORS 19.225 sets out a two-step process for this court to accept or deny interlocutory appeal of a class action order. First, the trial court must conclude, and we must agree, that three prerequisites are met: The order must involve (1) a "controlling question of law" (2) "as to which there is substantial ground for difference of opinion," and (3) that immediate review of which "may materially advance the ultimate termination of the litigation." ORS 19.225; *see Pearson v. Philip Morris, Inc.*, 208 Or App 501, 508-09, 145 P3d 298 (2006) (*Pearson I*) (holding that the legislature intended appellate courts to "independently analyze the statutory prerequisites to interlocutory appeal").[4] If we determine that those prerequisites are met, we must then decide whether to exercise our discretion to permit the appeal. ORS 19.225 provides, in relevant part:

> "When a circuit court judge, in making in a class action under ORCP 32 an order not otherwise appealable, is of the opinion that such order involves a controlling question of law as to which there is substantial ground for difference of opinion and that an immediate appeal from the order may materially advance the ultimate termination of the litigation, the judge shall so state in writing in such order. The Court of Appeals may thereupon, in its discretion, permit an appeal to be taken from such order to the Court of Appeals if application is made to the court within 10 days after the entry of the order."

---

[3] *See* ORAP 7.55(4)(b) ("The appellate commissioner shall have the authority to grant a request for reconsideration and modify or reverse the result. However, if the appellate commissioner would deny the request or grant the request and affirm the result, the commissioner shall forward the request to the Chief Judge or the Motions Department, as appropriate, for decision.").

[4] For the sake of clarity, we will refer to *Pearson v. Philip Morris, Inc.*, 208 Or App 501, 145 P3d 298 (2006), and *Pearson v. Philip Morris, Inc.*, 358 Or 88, 361 P3d 3 (2015), as *Pearson I* and *Pearson II*, respectively.

Adopted in 1973,[5] the statute was modelled after the general federal interlocutory appeal statute, 28 USC section 1292(b). *Pearson I*, 208 Or App at 504.

### III.   PREREQUISITES

We begin by explaining our conclusion that all three prerequisites of ORS 19.225 are met in this case. As noted, the question certified for appeal is "[w]hether common issues predominate over any issues affecting only individual class members." In certifying that question, the trial court determined that the question is controlling, that there is substantial ground for difference of opinion, and that immediate review may materially advance the termination of the litigation. The Appellate Commissioner agreed that there is substantial ground for difference of opinion but disagreed that the issue is controlling and, as a result, concluded that immediate review would not materially advance the termination of litigation.

Although we are careful not to "rubber stamp" a trial court's decision, our assessment of the ORS 19.225 prerequisites is informed by the trial court's findings and conclusions. *See Pearson I*, 208 Or App at 506 ("'The opinion of the district judge that a controlling question is involved, *while deserving of careful consideration*, is not binding upon this court ***.'" (Quoting *United States v. Woodbury*, 263 F2d 784, 786 (9th Cir 1959) (emphasis added).)). We agree with the Appellate Commissioner's conclusion that the second requirement—substantial ground for difference of opinion—is met in this case. Therefore, we focus on the first and third requirements.

Beginning with the first, a question of law is "controlling" for purposes of ORS 19.225 if it "will have a significant effect on the outcome of the litigation." *Id*. at 512. The issue need not be dispositive. *Id.* Here, the certified question is the issue of predominance, one of the eight factors that trial courts consider when determining if a class action is superior to other methods of adjudication. *See* ORCP 32 B(3) ("[t]he extent to which questions of law or fact common to

---

[5] The provision has been renumbered several times since its enactment, but its substance has remained unchanged. *Pearson I*, 208 Or App at 504 n 1.

the members of the class predominate over any questions affecting only individual members"). No factor is dispositive; rather, "the trial court has considerable discretion in weighing all of the factors that apply in a given case and determining if a class action will be a superior means of litigating the class claims." *Pearson v. Philip Morris, Inc.*, 358 Or 88, 106-07, 361 P3d 3 (2015) (*Pearson II*); *see also* OCRP 32 B (characterizing the factors as "matters pertinent to" the superiority finding); *Shea v. Chicago Pneumatic Tool Co.*, 164 Or App 198, 207, 990 P2d 912 (1999) (ORCP 32 "does not *require* predominance as a *sine qua non* of certification of any class" (emphasis in original)). Accordingly, predominance is not *per se* controlling.

However, as explained above, it is not necessary that the question be outcome determinative for it to be "controlling" for purposes of ORS 19.225. The predominance factor "is one that frequently drives class certification decisions," and it appears to have done so in this case. *Pearson II*, 358 Or at 106. The trial court characterized a lack of predominance as PacifiCorp's "primary argument against certification" and devoted the bulk of its opinion to that issue. That, in combination with the trial court's express determination that predominance was controlling, leads us to conclude that a contrary decision by this court would "have a significant effect on the outcome of the litigation." *Pearson I*, 208 Or App at 512.

We further concur with the trial court that immediate review has the potential to "materially advance the ultimate termination of the litigation." ORS 19.225. Certification "is well known to be one of the crucial orders in class action proceedings." *Joachim v. Crater Lake Lodge*, 276 Or 875, 879-80, 556 P2d 1334 (1976). Were we to accept interlocutory appeal and conclude that common questions do not predominate over individual ones, the trial court would likely decertify the class, thereby significantly changing the trajectory of the litigation. On the other hand, were we to deny immediate review, and the case proceeds to a judgment against PacifiCorp, a successful appeal at that point could necessitate the undoing of a long and complex trial. *See Migis v. AutoZone, Inc.*, 282 Or App 774, 782, 387

P3d 381 (2016), *adh'd to on recons*, 286 Or App 357, 396 P3d 309, *rev den*, 362 Or 300 (2017) (this court reviews a trial court's determination as to the single predominance factor for legal error). Thus, our review of the matter would materially advance the ultimate termination of the litigation, and so all three of the requirements outlined in ORS 19.225 are satisfied here.

## IV. DISCRETION

Having concluded that the statutory prerequisites are met, we must now decide whether to exercise our discretion to accept the appeal. We begin with an analysis of ORS 19.225 to understand how the legislature intended us to exercise that discretion.

### A. *Statutory Construction*

We interpret ORS 19.225 according to our familiar methodology of examining the statutory text and context, along with any legislative history that is helpful to our analysis. *State v. Gaines*, 346 Or 160, 171-72, 206 P3d 1042 (2009). The text, which we have previously characterized as "not particularly illuminating," provides that if the prerequisites are met, "[t]he Court of Appeals may thereupon, in its discretion, permit an appeal to be taken ***." *Pearson I*, 208 Or App at 503; ORS 19.225. The plain and legal meaning of "discretion" is the "power of free decision or choice within certain legal bounds." *Id.* at 503 (citations omitted).

The legislative history indicates that the provision's drafters intended that interlocutory appeals of class action orders in the state be handled similarly to those in the federal system. The statute was enacted as part of the bill that authorized class actions in Oregon, 1973 Senate Bill (SB) 163. Or Laws 1973, ch 349, § 22. As initially proposed, that bill was identical to the then-existing version of FRCP 23. Minutes, Senate Committee on Consumer and Business Affairs, SB 163, Feb 1, 1973, 2 (statement of Sen Keith Burns). Opponents of the bill expressed concern that it would graft one portion of the federal rules onto Oregon law without other procedural guardrails that were available in federal court but not in Oregon, such as expansive discovery, summary judgment, and interlocutory appeal. *See, e.g.,*

Tape Recording, Senate Committee on Judiciary, SB 163, Apr 11, 1973, Tape 20, Side 2 (statements of Hugh Biggs and Prentice O'Leary).

In response, the bill's proponents agreed to collaborate with its opponents to draft amendments that would incorporate some of those procedural mechanisms. *Id.* (statement of Laird Kirkpatrick). At that time, the federal rules did not include an interlocutory appeal provision specific to class actions; instead, such appeals were governed by the interlocutory appeal statute applicable to all civil suits (to which Oregon has no counterpart), 28 USC section 1292(b). *Pearson I*, 208 Or App at 504 & n 2. The amendment adopted by the legislature is substantially the same as section 1292(b), except that the Oregon statute only applies to class actions, while the federal statute applies to all civil suits. *Compare* ORS 19.225 *with* 28 USC § 1292(b).

"Because ORS 19.225 is modeled on 28 USC section 1292(b), we assume that the legislature intended to incorporate interpretations of that provision existing at the time that the Oregon statute was enacted." *Pearson I*, 208 Or App at 504. In analyzing the federal legislative history and pre-1973 case law about section 1292(b), we observed that "courts had difficulty articulating meaningful standards to cabin their discretion." *Id.* at 507. We ultimately gleaned five conclusions, four of which are relevant here:

- "The appellate courts had very broad discretion in deciding whether to allow an interlocutory appeal, including the power to consider matters unrelated to the merits of the appeal (such as the court's docket).

- "Congress intended that, in exercising their discretion, appellate courts might act in a manner similar to the way in which the Supreme Court acts in exercising its *certiorari* discretion.

- "Section 1292(b) was to be reserved for exceptional cases and not to be routinely employed.

- "Appellate courts were to exercise their discretion in a manner consistent with the goals of the provision, *viz.*, to promote judicial efficiency."

*Id.* at 508-09 (bullets in original, footnotes omitted).

Subsequently in the federal system, the United States Supreme Court added subsection (f) to FRCP 23, providing for discretionary interlocutory appeal specific to class certification decisions. *See Microsoft Corp. v. Baker*, 582 US 23, 30, 137 S Ct 1702, 198 L Ed 2d 132 (2017) (explaining how the Supreme Court promulgated FRCP 23(f)). Several features of that provision parallel those of the discretionary portion of ORS 19.225. As originally adopted, FRCP 23(f) provided that "[a] court of appeals may in its discretion permit an appeal from an order of a district court granting or denying class action certification under this rule."[6] The accompanying advisory committee note explained that "[t]he court of appeals is given unfettered discretion whether to permit the appeal, akin to the discretion exercised by the Supreme Court in acting on a petition for *certiorari*." FRCP 23(f) Advisory Committee Notes to 1998 Amendment. The note further observed that "this discretion suggests an analogy to the provision in 28 USC § 1292(b)." *Id*. The advisory note thus indicates that FRCP 23(f) was intended to align with the discretionary portion of section 1292(b). Given that ORS 19.225 was patterned on that portion of section 1292(b), we think it appropriate to look to federal cases that address the exercise of discretion under FRCP 23(f)—to the extent we find the reasoning of such cases persuasive—for the purpose of identifying guideposts to govern the exercise of the "broad discretion" we have with respect to granting interlocutory appeal of class certification orders. *Pearson I*, 208 Or App at 508.

B.  *Discretionary Criteria*

The federal courts, with some variation, have generally adopted three categories of class certification orders that warrant interlocutory appeal: (1) an order that will effectively terminate the litigation, (2) an appeal that presents an unsettled and fundamental issue of law, and (3) an order that is manifestly erroneous. In articulating and applying

---

[6] The words "in its discretion" were removed in 2007 as part of the general stylistic update to the entire code, but the accompanying committee note made clear that the amendment was not intended to "in any way limit the unfettered discretion established by the original rule." FRCP 23(f) Advisory Committee Notes to 2007 Amendment. There were also some amendments in 2018 which have no bearing here.

those criteria, we must bear in mind the legislative intent behind ORS 19.225—in particular, that it be "reserved for exceptional cases and not [] be routinely employed," and that its ultimate goal is "to promote judicial efficiency." *Pearson I*, 208 Or App at 509. This case does not qualify for any of the categories, and as such, we decline to exercise our discretion to accept immediate review.

1.  *Whether the order will effectively terminate the litigation*

The first category, which all circuits have adopted, is where the certification order "sounds the death knell of the litigation." *Blair v. Equifax Check Services, Inc.*, 181 F3d 832, 834 (7th Cir 1999). That situation occurs when the certification order "is likely to force either a plaintiff or a defendant to resolve the case based on considerations independent of the merits." *Vallario v. Vandehey*, 554 F3d 1259, 1263 (10th Cir 2009). For instance, if a trial court denies certification, the representative plaintiff's claim may be "too small to justify the expense of litigation." *Blair*, 181 F3d at 834. On the other hand, "if class certification is granted, a defendant's potential liability may be so enormous that settlement becomes the only prudent course." *Vallario*, 554 F3d at 1263 (internal quotation marks omitted).

There is variation between the circuits in that some will accept a case solely because it would sound the death knell of the litigation, while most require that the certification order also be substantively weak. *Compare Prado-Steiman ex rel Prado v. Bush*, 221 F3d 1266, 1274 (11th Cir 2000) (accepting interlocutory appeal when "the district court's ruling is likely dispositive of the litigation by creating a 'death knell' for either plaintiff or defendant"), *with Blair*, 181 F3d at 834 ("[W]hen denial of class status seems likely to be fatal, and when the plaintiff has a solid argument in opposition to the district court's decision, then a favorable exercise of appellate discretion is indicated."). We need not resolve that tension here, however, because the order in this case will not effectively terminate all litigation. PacifiCorp does not contend that certification has raised the stakes so substantially that it feels "irresistible pressure to settle."

*Prado-Steiman*, 221 F3d at 1274. Additionally, the representative plaintiffs suffered extensive damage to their property as a result of the wildfires, enough to justify continuing the lawsuit in the absence of class certification. *See id*. (describing the death knell as one where "the stakes are too low for the named plaintiffs to continue the matter"). As a result, the litigation will not be effectively terminated by the class certification decision.

2. *Whether the appeal presents a novel legal issue*

The second category which all circuits have adopted is if interlocutory review "will permit the resolution of an unsettled legal issue that is important to the particular litigation as well as important in itself." *Prado-Steiman*, 221 F3d at 1275 (citation and internal quotation marks omitted).[7] When a certification order rests on a novel legal question, immediate review "contribut[es] to both the orderly progress of complex litigation and the orderly development of the law." *Waste Management Holdings, Inc. v. Mowbray*, 208 F3d 288, 293 (1st Cir 2000). However, "a class certification decision which turns on case-specific matters of fact and district court discretion—as most certification decisions indisputably do—generally will not be appropriate for interlocutory review." *Prado-Steiman*, 221 F3d at 1275-76 (citation and internal quotation marks omitted).

A good example of a case that fits this category is *Maza v. Waterford Operations, LLC*, 300 Or App 471, 455 P3d 569 (2019), *rev den*, 366 Or 382 (2020). The trial court in *Maza* denied certification due to a lack of commonality, based on its interpretation of a regulation requiring employers to provide workers with meal breaks. *Id*. at 475. The trial court certified a question about the interpretation of that regulation, and we exercised our discretion to address it. *Id*. The issue was novel in that no case law had previously addressed it, and the decision resolved an important question about the parameters of the meal break requirement. *Id*. at 480. Moreover, answering the trial court's question

---

[7] Some circuits also require that the question be likely to escape review after final judgment and that it be directly related to class action law. *E.g.*, *Vallario*, 554 F3d at 1263; *Chamberlan v. Ford Motor Co.*, 402 F3d 952, 959 (9th Cir 2005). Once again, we need not resolve that nuance here.

was an exercise in statutory construction—a task to which appellate courts are well-suited.

PacifiCorp argues that we should accept this case to answer the question of whether common issues predominate over individual ones when a power company's alleged negligence combines with a weather event to cause geographically distinct wildfires. However important and novel that question may be, it is not a purely legal one; rather, here, it is dependent on the specific facts and the parties' theories of the case, making it less suitable for immediate review.

Although predominance is "ultimately a legal conclusion," its resolution "can require, and even pivot on, the resolution of disputed facts." *Pearson II*, 358 Or at 108-09. It also "depends on a pragmatic assessment of how a case, if fairly and fully tried, is likely to be litigated." *Id.* at 114. In other words, courts must "predict the degree to which litigation of the controversy will require delving into individualized proof or, conversely, the degree to which the issues lend themselves to resolution through common proof." *Id.*

In this case, the trial court contemplated that the first phase of the trial would litigate PacifiCorp's fault as to each ignition point of the four separate fires, as well as determine how the fires spread from those points, taking into account other causes such as lightning strikes. The second phase would focus on whether and how much PacifiCorp is liable to each claimant based on the location of their property and the extent of the damage to their individual property. Thus, the first phase would take into account issues of causation and foreseeability as they relate to each ignition point and the fires' progression, which would not require a "property-by-property" analysis. Individual defenses such as mitigation would then be taken into account during the second phase.

The trial court based its decision on plaintiffs' particular theories of the case and PacifiCorp's proffered defenses, in combination with the parties' extensive expert evidence about the fires, to promulgate a trial management strategy that, in the trial court's view, would use predominantly common evidence in the first phase, leaving most individualized

inquiries for the second phase. That task was ultimately a predictive exercise based on the specific record below. As a result, we do not believe that the case presents a novel legal issue that counsels in favor of immediate review.

### 3.   *Whether the order is manifestly erroneous*

The final category is when the trial court's certification order is "manifestly erroneous." *Chamberlan v. Ford Motor Co.*, 402 F3d 952, 959 (9th Cir 2005). Not all circuits accept this category, but, given ORS 19.225's emphasis on judicial efficiency, we do so in order to prevent "self-evidently defective classes" from "proceed[ing] through trial to final judgment, only to face certain decertification on appeal and a requirement that the process begin again from square one." *Lienhart v. Dryvit Systems, Inc.*, 255 F3d 138, 145 (4th Cir 2001). However, as interlocutory review is also generally disfavored, the "error must be truly 'manifest,' meaning easily ascertainable from the petition itself." *Chamberlan*, 402 F3d at 959. Such errors will usually be "of law, as opposed to an incorrect application of law to facts" because legal errors "will be more obvious and susceptible to review at an early stage than an error that must be evaluated based on a well developed factual record." *Id.*

We are not persuaded that the trial court's predominance determination is manifestly erroneous. PacifiCorp does not contend that the trial court fundamentally misapprehended a particular legal rule; rather, PacifiCorp argues that the trial court misapplied tort principles to the facts of this case. In PacifiCorp's view, causation and foreseeability need to be proven as to each specific parcel of damaged property, not, as the trial court concluded, to each ignition point and to the fires' geographic progression from those points. Our resolution of that issue would require extensive analysis of the record below, which includes detailed expert opinions, in order to determine whether the evidence common to all plaintiffs outweighs issues that are specific to each piece of property. On the face of the order, reasonable minds could differ about the issue of predominance in this case, and thus, any error is not manifest. We note further that the trial court may rescind or amend its certification order at any point prior to a decision on the merits, if the

litigation does not pan out the way the court expects. ORCP 32 C(1).

## V.    CONCLUSION

In sum, we agree with the trial court that, in this case, predominance is "a controlling question of law as to which there is substantial ground for difference of opinion and that an immediate appeal from the order may materially advance the ultimate termination of the litigation." ORS 19.225. However, in view of the legislature's intent that interlocutory review be generally disfavored and used to promote judicial efficiency in only the exceptional case, we decline to exercise our discretion to accept the appeal. The litigation will continue whether or not we reverse the certification order, the legal issue presented is not well suited to interlocutory review, and the certification order is not manifestly erroneous.

Reconsideration allowed; previous order adhered to.